UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHARMANIAGA BERHAD, a Malaysian entity,<br><br>Petitioner,<br><br>v.<br><br>E*HEALTHONLINE.COM, INC., a Delaware corporation,<br><br>Respondent. | No. 2:17-cv-02672-MCE-EFB<br><br>**MEMORANDUM AND ORDER** |

This Memorandum and Order disposes of the following currently pending motions (the "Motions"): (1) Petitioner Pharmaniaga Berhad's ("Pharmaniaga") Motion for Confirmation of Foreign Arbitral Award, Entry of Judgment, and Attorney's Fees Incurred in Confirming the Award (ECF No. 16, the "Motion to Confirm"); (2) Respondent E*Healthline.com, Inc. ("EHL")'s Motion to Dismiss (ECF No. 23, the "Motion to Dismiss"); (3) EHL's Motion to Vacate Arbitral Award (ECF No. 26, the "Cross-Motion to Vacate"); and (4) Pharmaniaga's Motion for Right to Attach Order and Writ of Attachment (ECF No. 43, the "Attachment Motion"). For the following reasons, the Motion to Confirm is GRANTED, and the remaining Motions are DENIED.[1]

---

[1] Having determined that oral argument would not be of material assistance, the Court ordered the Motion submitted on the briefs pursuant to Local Rule 230(g).

1

**BACKGROUND**

All of the Motions arise from the London-seated arbitration titled E*HealthLine.com Inc. v. Modern Industrial Investment Holding Group Co. Ltd. & Pharmaniaga Berhad, ICC Case No. 20125/RD (the "Arbitration"), in which EHL was the claimant and Pharmaniaga and Modern Industrial Investment Holding Group Co. Ltd. ("Modern") were the respondents. A three-member arbitral tribunal (the "Tribunal") presided over the Arbitration.

The procedural history of the Arbitration involved:

- Significant document productions by all parties;
- Extensive pre-hearing pleadings (with evidentiary exhibits and written fact and expert testimony) by all parties throughout 2014-2016;
- A five-day hearing (with opening and closing statements, live witness testimony, and cross-examination) in April 2016;
- Post-hearing submissions by all parties on the merits in May 2016; and
- Post-hearing submissions by all parties on the allocation of the Arbitration's costs.

The Arbitration concluded on November 2, 2016, when the Tribunal issued its unanimous, 174-page "Final Award," which is included as an exhibit to Pharmaniaga's Motion to Confirm. ECF No. 1-2. In the Final Award, the Tribunal rejected all of EHL's claims, finding that Pharmaniaga and Modern succeeded on all "material issues addressed by the Tribunal" and EHL "ha[d] not succeeded upon any of the Tribunal's Principal Issues[.]" Id. at 170.

During the Arbitration, "[a]ll three Parties [were] agreed" that the Tribunal's decision on the allocation of costs "should reflect the Parties' relative success and failure in the [A]rbitration." Id. at 169. Applying this standard after rejecting EHL's claims, the Tribunal ordered EHL to pay for the costs of the Arbitration (including the parties' legal fees) for a total of £2,000,000.00 (at a post-award interest rate of 4% per annum) and

$872,953.00 (at a post-award interest rate of 3% per annum).  Id. at 172.  Although the Final Award awarded part of that total to Pharmaniaga and part to Modern, Modern assigned Pharmaniaga its interest in the Final Award pursuant to an Assignment of Rights Agreement dated November 5, 2017.  See ECF No. 1-5 ("Assignment Agreement") at ¶ 5(a).

Throughout 2016 and 2017, Pharmaniaga asked (through counsel) for EHL to pay the amounts ordered by the Final Award, but EHL refused.  See ECF No. 1-1 ("First Harrison Affidavit") at ¶¶ 7-8.  On December 21, 2017, Pharmaniaga initiated this action to enforce the Final Award.  See ECF No. 1.  On February 2, 2018 and February 8, 2018, respectively, EHL filed its Motion to Dismiss and Cross-Motion to Vacate.  On March 19, 2018, Pharmaniaga filed its Attachment Motion.

## ANALYSIS

### A.　The Final Award Is Confirmed

Pharmaniaga's Motion to Confirm, and EHL's Motion to Dismiss and Cross-Motion to Vacate, all address the question of whether the Final Award should be confirmed.  For the reasons stated below, the Court finds that the Final Award should be confirmed, and hereby GRANTS Pharmaniaga's Motion to Confirm and DENIES EHL's Motion to Dismiss and Cross-Motion to Vacate.

#### 1.　The New York Convention Governs Confirmation of the Final Award

The confirmation of the Final Award is governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 (the "New York Convention").  See Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co., 284 F.3d 1114, 1120 (9th Cir. 2002) (holding the New York "Convention governs [an] action to confirm [an] arbitration award" where "the award was obtained in the United Kingdom (London)[.]"); see also 21 U.S.T. 2517 (the New York Convention), Art. I(1)

("This Convention shall apply to the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought[.]"). Indeed, the parties to this proceeding agree to the foregoing. See, e.g., ECF No. 16 at ¶ 2; ECF No. 26-1 at pp. 7:28-8:2.

### 2. Pharmaniaga Has Met Its Burden To Confirm The Final Award

A petitioner seeking the confirmation of a foreign arbitral award satisfies its burden by submitting copies of (1) the award and (2) the agreement to arbitrate. 21 U.S.T. 2517, Art. IV. Pharmaniaga has met this burden by submitting the Final Award and the agreement to arbitrate found in the Memorandum of Collaboration ("MOC"), which is the same agreement to arbitrate that EHL invoked in submitting its claims to arbitration in the first place. ECF No. 1-2 at p. 10.

### 3. There Is No Basis To Refuse Confirmation Under the New York Convention

Federal law implementing the New York Convention provides that a court "shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the [New York] Convention." 9 U.S.C. § 207. Article V(2) of the New York Convention sets forth two grounds for non-enforcement; Article V(1) sets forth five affirmative defenses to be pleaded and proved by the responding party. See 21 U.S.T. 2517, Art. V(1) ("enforcement of the award <u>may</u> be refused, <u>at the request of the party against whom it is invoked, only if</u> that party furnishes . . . proof[.]") (emphasis added); see also, e.g., <u>Ministry of Defense and Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Defense Systems, Inc.</u>, 665 F.3d 1091, 1096 (9th Cir. 2011) ("[T]he party opposing recognition or enforcement bears the burden of establishing that a defense applies").

EHL has not challenged the Final Award on any ground for non-enforcement stated in Article V(2)(a)-(b), and the Court finds that none of these grounds applies in any event because the subject matter of the parties' dispute is arbitrable, and recognition or enforcement of the Final Award would not be contrary to the public policy of the

United States. See, e.g., American Express Co. v. Italian Colors Restaurant, 570 U.S. 228, 233 (2013) (courts "must 'rigorously enforce' arbitration agreements according to their terms" unless "overridden by a contrary congressional command"); Cubic Defense, 665 F.3d at 1097 (the public policy exception "applies only when confirmation or enforcement of a foreign arbitration award 'would violate the forum state's most basic notions of morality and justice'") (quotations omitted); accord Termorio S.A. E.S.P. v. Electranta S.P., 487 F.3d 928, 938 (D.C. Cir. 2007).

EHL challenges the award based on the affirmative defenses stated under Article V(1)(e) and V(1)(b) only. This Circuit construes the defenses available under Article V narrowly. See, e.g., Ministry of Defense of the Islamic Republic of Iran v. Gould, Inc., 969 F.2d 764, 770 (9th Cir. 1992) (the New York Convention's grounds for non-enforcement "should be construed narrowly" in light of the "general pro-enforcement bias" that animates the New York Convention and federal law as a whole) (quotations omitted).

Article V(1)(e) applies where "[t]he award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made." 21 U.S.T. 2517, Art. V(1)(e). The Final Award was made in London under English law (see ECF No. 1-2 at pp. 21, 174), and EHL has not argued (or submitted any evidence) that the Final Award has been "set aside or suspended" by any court or other competent authority of the United Kingdom. EHL's argument under Article V(1)(e) thus fails.

Article V(1)(b) applies where "[t]he party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case[.]" 21 U.S.T. 2517, Art. V(1)(b). EHL does not dispute that it participated in the Arbitration (including the document production, pre- and post-hearing submissions of pleadings and evidence, and the five-day hearing in London). See ECF No. 1-2 at pp. 12-16. In addition, EHL's counsel confirmed on the record at the Arbitration, in response to the Tribunal's

1 question, that it had "no grievances" regarding the Tribunal's handling of the Arbitration
2 proceedings. See ECF No. 36-5 (Excerpt from the Arbitration Hearing Transcript) at
3 pp. 163:24-165:16. "This concession, when given the opportunity to present objections
4 to the alleged fundamental unfairness on the record, effectively operates as a waiver of
5 [the] argument that the arbitrators deprived [that party] of a fundamentally fair
6 proceeding." Urquhart v. Kurlan, 2017 WL 781742, at *7 (N.D. Ill.).[2] The Court
7 accordingly finds that EHL was able to present its case – and did present its case – to
8 the Tribunal. EHL's argument that it was "unable to present its case" within the meaning
9 of Article V(1)(b) therefore fails.

### 4. EHL's Non-New York Convention Arguments Also Fail

EHL's Motion to Vacate also argues under 9 U.S.C. § 10 that EHL was deprived of a fair hearing because the Tribunal allegedly adopted an unfair burden of proof and allegedly improperly disregarded evidence, and that the Final Award was tainted by bias. None of these arguments is persuasive.

#### a. The New York Convention provides the sole basis to vacate.

As a preliminary matter, EHL's 9 U.S.C. § 10 defenses are not cognizable because they do not arise under the New York Convention, which provides the exclusive grounds for refusing enforcement of a foreign arbitral award. See, e.g., Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc., 126 F.3d 15, 20 (2d Cir. 1997) ("There is now considerable caselaw holding that, in an action to confirm an award rendered in, or under the law of, a foreign jurisdiction, the grounds for relief enumerated in Article V of
///

---

[2] EHL asserts the statement was a mere courtesy without legal effect, citing People of Territory of Guam v. Marquez, 963 F.2d 1311, 1314 (9th Cir. 1992) (cited by EHL at ECF No. 41 (Reply i/s/o Motion to Vacate) at p. 9:16-22). EHL's analogy to Marquez (a criminal case that did not address arbitration) is inapposite. The record reflects that the Tribunal was offering EHL an opportunity to address any objection it may have had to the Arbitration proceedings. ECF No. 36-5 at pp. 163:24-165:16 ("THE PRESIDENT: And lastly, as you will probably appreciate, arbitrators are human beings and they can make mistakes. If there is any grievance you think that we have caused which we can now put right, we would like you to speak now.").

the [New York] Convention are the only grounds available for setting aside an arbitral award.").[3]

### b. EHL was not deprived of a fair hearing.

Even if the defenses set forth in 9 U.S.C. § 10 did apply, however, EHL was not denied a fundamentally fair hearing, i.e., a hearing with "'the minimal requirements of fairness'—adequate notice, a hearing on the evidence and an impartial decision by the arbitrator." Sunshine Mining Co. v. United Steelworkers of America, 823 F.2d 1289, 1295 (9th Cir. 1987) (quotations omitted). EHL itself confirmed during the arbitral hearing that it had "no grievances" concerning the adequacy of the proceedings. See ECF No. 36-5 (Excerpt from the Arbitration Hearing Transcript) at pp. 163:24-165:16. Moreover, this Court's review of the extensive record and the Final Award itself make clear that the arbitral proceedings EHL itself initiated were conducted appropriately.

Indeed, EHL has not identified any evidence or argument that the Tribunal prejudicially prevented EHL from presenting or making, nor any misconduct tantamount to "bad faith" on the part of the arbitrators. See, e.g., Dastime Grp. Ltd. v. Moonvale Invs. Ltd., No. 17-cv-01859, 2017 WL 4712179, at *7-8 (C.D. Cal.) (requiring misconduct approximating "bad faith" to support vacatur); Coutee v. Barington Capital Group, L.P., 336 F.3d 1128, 1134 (9th Cir. 2003) (vacatur requires a showing of prejudice); accord Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara, 364 F.3d 274, 304 (5th Cir. 2004).

///
///
///
///
///

---

[3] EHL casts its argument regarding a "fundamentally fair hearing" as both a New York Convention argument and an argument under 9 U.S.C. § 10. See, e.g., ECF No. 41 at p. 8:2-8. For the reasons given herein, the Court finds that EHL did participate in a fundamentally fair hearing, and EHL's argument to the contrary fails under any applicable legal standard.

7

|   |   |
|---|---|
| 1 | Instead, EHL argues that the 174-page Final Award improperly weighed the |
| 2 | evidence. See, e.g., ECF No. 41 (Reply i/s/o Motion to Vacate) at 14:6-9. But a re- |
| 3 | evaluation of the evidence is beyond this Court's scope of review.[4] See, e.g., Oxford |
| 4 | Health Plans LLC v. Sutter, 569 U.S. 564, 568-69 (2013); Lagstein v. Certain |
| 5 | Underwriters at Lloyd's, 607 F.3d 634, 640-41 (9th Cir. 2010) ("But § 10 of the FAA 'does |
| 6 | not sanction judicial review of the merits,' and '[w]hether or not the panel's findings are |
| 7 | supported by the evidence in the record is beyond the scope of our review.'") (quotations |
| 8 | omitted). |
| 9 | None of the cases on which EHL relies involve the vacatur of an arbitral award |
| 10 | based on the evidentiary conclusions in the award itself, rather than specific actions |
| 11 | taken by arbitrators during the arbitral proceedings (such as the failure to admit evidence |
| 12 | into the record or the failure to make reasonable accommodations necessary to hear |
| 13 | critical witness testimony). |
| 14 | The Court therefore rejects EHL's argument that it was deprived of a fair hearing. |
| 15 | /// |
| 16 | /// |

---

[4] In any event, the Final Award reflects substantial evidence supporting the Tribunal's conclusions. For example, there was evidence suggesting that Dr. Mekhamer (EHL's primary witness) was untruthful and unreliable in his testimony (see ECF No. 1-2 at ¶¶ 5.10, 5.13) and that Dr. Mekhamer's wife (EHL's only other witness) had no independent knowledge of key events (see ECF No. 1-2 at ¶¶ 4.26, 5.12-5.13). In addition, EHL's expert witness admitted that he removed critical information from his report at EHL's lawyers' "highly unusual" request (see ECF No. 36-4, Ex. 12 (Arbitration Hearing Transcript for Day 4) at 157:10-159:25), and EHL failed to call another witness available to it that may have been able to corroborate its claims (see ECF No 1-2 at ¶¶ 5.15, 5.43-5.72, 5.80). The following excerpts further highlight the Tribunal's reasoning and justification for weighing the evidence before it against EHL. The Tribunal concluded that (1) EHL based its claims to have provided Pharmaniaga and Modern with valuable intellectual property on "hopelessly vague, unspecific and unparticularised" assertions, and on "knowledge which was [not] unique to EHL" or obvious proposals for which there was "manifestly no special insight or analysis," (see ECF No. 1-2 at ¶¶ 5.143, 5.149, 5.151, 5.153); (2) "There is no case that [Pharmaniaga and Modern] misused [EHL]'s confidential information or work-product for their bilateral joint venture," (ECF No. 1-2 at ¶ 5.198); (3) "Dr. Mekhamer gave evidence to the Tribunal that he must have known to be untrue, as indeed it was," (ECF No. 1-2 at ¶ 5.13); (4) EHL alleged that many of its supposed "secrets" were transmitted over the phone by Dr. Mekhamer, yet "[d]espite [Dr. Mekhamer's] insistence that he made notes of such calls, none were provided to the Tribunal by [EHL]," (ECF No. 1-2 at ¶ 5.162); (5) EHL "falsified EHL Exhibits 61, 63 and 64," which were "deliberately presented by [EHL] to the Tribunal as genuine in a misplaced attempt to found its claim[,]" (ECF No. 1-2 at ¶ 5.108); see also ECF No. 35 (Pharmaniaga Berhad's Opposition to EHL's Cross-Motion to Vacate) at pp. 15-16 (discussing issue of forged evidence)).

8

### c. The Final Award was not tainted by bias.

EHL also argues under 9 U.S.C. § 10 that the Final Award was tainted by bias. EHL bases this argument on the disclosure by one arbitrator, during the hearing, of several social encounters he had with one of Modern's witnesses, who was not a party to the case or an employee of any party. See ECF No. 36-1 (Second Affidavit of Daniel Harrison ("Second Harrison Affidavit"), Ex. 9; ECF No. 16-2 at ¶¶ 4.2, 4.34, 5.62.

In the Ninth Circuit, an arbitrator's failure to disclose a conflict of interest can warrant vacatur where the nondisclosure demonstrates a "reasonable impression of partiality." Schmitz v. Zilveti, 20 F.3d 1043, 1047 (9th Cir. 1994). A "reasonable impression of partiality" exists where there are "direct financial connections between a party and an arbitrator or its law firm, or a concrete possibility of such connections." In re Sussex, 781 F.3d 1065, 1074 (9th Cir. 2015).

EHL does not meet this standard. The contacts between the arbitrator and Modern's witness were social, infrequent, and insignificant, as confirmed by the arbitrator's lack of recollection of having met the witness until reminded by Modern's counsel at the hearing. "[V]acatur could not be required 'simply because an arbitrator failed to disclose a matter of some interest to a party.'" Id. (quotation omitted). The arbitrator's contact with one of Modern's witnesses was not a material conflict and the arbitrator's late disclosure did not create a reasonable impression of partiality.

In addition, EHL already waived any bias challenge based on this disclosure. See ECF Nos. 36-1, 39-2. See, e.g., Fidelity Federal Bank, FSB v. Durga Ma Corp., 386 F.3d 1306, 1313 (9th Cir. 2004) ("[T]he waiver-doctrine applies where a party to an arbitration has constructive knowledge of a potential conflict but fails to timely object[.]").

The Court therefore rejects EHL's argument that the award was tainted by bias.

///
///
///
///

## 5. There Is No Basis To Dismiss Pharmaniaga's Petition

EHL seeks dismissal of Pharmaniaga's Petition to Confirm the Final Award under Rule 12(b) of the Federal Rules of Civil Procedure on grounds that the Final Award is not "final" because the Tribunal rejected three of EHL's 19 claims on jurisdictional grounds.[5]

The Court rejects EHL's argument that the Tribunal was required to assume jurisdiction over all of EHL's claims in order to render an enforceable award. Arbitrators are required to assess their jurisdiction on a claim-by-claim basis, and numerous courts have confirmed arbitral awards on similar facts, where some (but not all) claims fell within the arbitrators' jurisdiction. See, e.g., Summer Rain v. Donning Co./Publishers, Inc., 964 F.2d 1455, 1461 (4th Cir. 1992), as amended (June 23, 1992) ("[A]rbitrability is to be determined on an issue-by-issue basis"); see also Sony Ericsson Mobile Commc'ns AB v. Delta Elecs. (Thailand) Pub. Co., No. C-09-1326 MMC, 2009 WL 1874063, at *1, *4 (N.D. Cal. June 26, 2009) (confirming award where the tribunal "found the parties had formed an arbitration agreement," "some but not all" of the claims fell within that agreement, and awarded damages on claims "the tribunal found to be properly before it"); Bayme v. GroupArgent Sec., LLC, No. 10 Civ. 6213(GBD), 2011 WL 2946718, at *4 (S.D.N.Y. July 19, 2011) (confirming award including dismissal on jurisdictional grounds); Anthony v. Affiliated Comput. Servs., Inc., No. 3:12-CV-00964 (CSH), 2014 WL 1330272, at *1, *3 (D. Conn. Apr. 2, 2014), aff'd, 621 F. App'x 49 (2d Cir. 2015).

EHL does not cite any case yielding the opposite result, i.e., a case in which an arbitral award was vacated because the arbitrators determined they lacked jurisdiction over some (but not all) claims. See ECF No. 34 (Opposition to Motion to Dismiss) at pp. 13:10-14:2. Particularly in the context of this case, where the Final Award represents Pharmaniaga and Modern's legal costs incurred in defending against EHL's claims, the Court finds that Pharmaniaga is entitled to recover its costs as the "prevailing party" in

---

[5] EHL appears to challenge this Court's subject matter jurisdiction. This Court finds that it has subject matter jurisdiction under both 9 U.S.C. § 203 and 28 U.S.C. § 1332.

the Arbitration. See, e.g., CRST Van Expedited, Inc. v. EEOC, 136 S. Ct. 1642, 1651 (2016) ("[A] defendant need not obtain a favorable judgment on the merits in order to be a 'prevailing party.'") (quotations omitted). In any event, were the Court to accept EHL's argument, it would open the door for parties seeking to initiate arbitration proceedings to include claims over which there is clearly no jurisdiction to protect any potentially adverse award from eventually being confirmed. Such a possibility runs contrary to common sense.

Moreover, under Ninth Circuit law, EHL is estopped from challenging the Tribunal's jurisdiction on its claims because a party "may not voluntarily submit his claim to arbitration, await the outcome, and, if the decision is unfavorable, then challenge the authority of the arbitrators to act." Ficek v. S. Pacific Co., 338 F.2d 655, 657 (9th Cir. 1964); see also Moseley, Hallgarten, Estabrook & Weeden, Inc. v. Ellis, 849 F.2d 264, 269 (7th Cir. 1988) ("Having insisted on the arbitration, Ellis is now precluded from challenging the arbitrators' power to determine the partnership's and/or Ellis's liability."). Again, the fact that EHL initiated the claims and asserted that the Tribunal had jurisdiction over them weighs in favor of allowing Pharmaniaga and Modern to recover their legal costs for defending against EHL's claims.

For the foregoing reasons, the Court CONFIRMS the Final Award.

**B.      Entry of Judgment**

Pharmaniaga's Motion to Confirm also seeks entry of judgment. ECF No. 16 at p. 10. The Court finds that Pharmaniaga is entitled to payment by EHL of £2,000,000.00 (at a post-award interest rate of 4% per annum) and $872,953.00 (at a post-award interest rate of 3% per annum), i.e., the full amount EHL was ordered to pay to Pharmaniaga and Modern in the Final Award. ECF No. 16-2 at p. 172.

The Court finds that this amount is "a sum certain" within the meaning of Rule 58(b)(1)(B) of the Federal Rules of Civil Procedure, such that the clerk shall "promptly prepare, sign, and enter the judgment" without further direction from the Court. See Fed. R. Civ. P. 58(b)(1)(B).

### C. Pharmaniaga's Request For Attorney's Fees For Enforcement

Pharmaniaga's Motion to Confirm also seeks its attorney's fees incurred in enforcing the Final Award. Under the Ninth Circuit's case law, this Court is authorized to award attorney's fees where "an unjustified refusal to abide by an arbitrator's award" forces a party to file an enforcement proceeding under the New York Convention. <u>Cubic Defense</u>, 665 F.3d at 1104 (quoting <u>Sheet Metal Workers' Int'l Ass'n Local Union 359 v. Madison Industries, Inc.</u>, 84 F.3d 1186, 1192 (9th Cir. 1996)). A refusal to pay is unjustified where a party "simply ignored the validity of the Arbitration Award and sought to avoid payment," forcing the creditor "to expend resources to litigate" the award's enforcement. <u>Ministry of Defense and Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Defense Systems, Inc.</u>, No. 98-CV-1165, 2013 WL 55828, at *6 (S.D. Cal.).

The Court finds that EHL's refusal to abide by the Final Award has been unjustified. The Arbitration was a proceeding that EHL voluntarily initiated, requiring respondents Pharmaniaga and Modern to expend millions of dollars in legal fees. <u>See</u> ECF No. 1-2 at ¶¶ 1.1-1.3, 6.16, 6.19. Consistent with governing English law and the applicable arbitral rules, the Final Award requires EHL to pay a portion of the legal costs of Pharmaniaga and Modern, as prevailing parties in the Arbitration. <u>Id.</u> at 6.20-6.35.

In addition, under the arbitral rules governing the Arbitration, the Final Award was supposed to be self-executing, but EHL refused payment and did not undertake any steps to correct, challenge, or appeal the award. <u>See</u> ECF No. 1-3 (Arbitration Agreement) at § 17.2; ECF No. 1-9 (ICC Rules) at Article 34(6) ("Every award shall be binding on the parties."). EHL's principal arguments against confirmation of the Final Award are disputes with the Tribunal's credibility determinations and weighing of the evidence, which are outside the scope of judicial review in an arbitral award enforcement proceeding. Accordingly, the Court finds it appropriate to award Pharmaniaga the reasonable costs it expended to confirm the Final Award.

///

Not later than thirty (30) days following the date this Memorandum and Order is electronically filed, Pharmaniaga shall file a motion pursuant to Rule 54(d) of the Federal Rules of Civil Procedure to address the amount of the attorney's fees and other costs it seeks. That motion need not address Pharmaniaga's entitlement to attorney's fees, which is established by this Order.

### D. Pharmaniaga's Attachment Motion

Pharmaniaga's Attachment Motion seeks a right to attach order and a writ of attachment in the amount of $3,506,953, directed at "all corporate property which is subject to attachment pursuant to subdivision (a) of the Code of Civil Procedure Section 481.070." ECF No. 43-2 (Affidavit of Melanie M. Blunschi) at ¶¶ 3(b), 3(e). However, given that the Court is confirming the Final Award and directing that Judgment be entered forthwith, there is no further pre-judgment period for which attachment would be appropriate. Accordingly, the Attachment Motion is DENIED without prejudice.[6]

### CONCLUSION

Consistent with the foregoing rulings, the Court hereby ORDERS as follows:

1. Pharmaniaga's Motion for Confirmation of Foreign Arbitral Award, Entry of Judgment, and Attorney's Fees Incurred in Confirming the Award (ECF No. 16) is GRANTED and the Final Award is CONFIRMED;

2. Respondent E*Healthline.com, Inc.'s Motion to Dismiss (ECF No. 23) is DENIED;

3. EHL's Motion to Vacate Arbitral Award (ECF No. 26) is DENIED;

---

[6] Nothing in this Memorandum and Order should be construed to preclude Pharmaniaga from pursuing any post-judgment enforcement procedures that may be available. That Court does note, however, that it would have declined to grant Pharmaniaga's current attachment request in any event because it does not specifically identify property to be attached. While the Court is aware of the breadth of the statutory language pertaining to the attachment of corporate property, from a practical perspective, this Court also has to provide direction to the United States Marshal's Service personnel who will be called upon to execute the Court's attachment order. This Court will not ask Deputy United States Marshals to determine what property should be attached when the parties are in a much better position to do so.

4. Pharmaniaga's Motion for Right to Attach Order and Writ of Attachment (ECF No. 43) is DENIED without prejudice;

5. The clerk shall promptly prepare, sign, and enter judgment against EHL and in Pharmaniaga's favor for payment of £2,000,000.00 (at a post-award interest rate of 4% per annum) and $872,953.00 (at a post-award interest rate of 3% per annum), with interest to be applied from the date of issuance of the Final Award on November 2, 2016;

6. Not later than thirty (30) days following the date this Memorandum and Order is electronically filed, Pharmaniaga shall file a motion pursuant to Rule 54(d) of the Federal Rules of Civil Procedure to address the amount of the attorney's fees and other costs it seeks, with the motion, opposition, and reply briefs due on the dates specified by Local Rule 293(a).

IT IS SO ORDERED.

Dated: September 6, 2018

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE